# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-11236
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 28, 2014

Lyle W. Cayce
Clerk

DANNY ROBINSON; SHIRREE ROBINSON,

Plaintiffs–Appellants,

v.

WELLS FARGO BANK, N.A., doing business as Wells Fargo Home
Mortgage; FEDERAL HOME LOAN MORTGAGE CORPORATION,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:11-CV-684

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiffs Danny and Shirree Robinson appeal the district court's grant
of summary judgment on their Texas Debt Collection Act claims and the
district court's dismissal for failure to state a claim of other state law claims
asserted against Wells Fargo Bank, N.A. (Wells Fargo) and the Federal Home

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-11236

Loan Mortgage Corporation (Freddie Mac) relating to the foreclosure of their home. We affirm.

**I**

Danny and Shirree Robinson obtained a home-equity loan from Wells Fargo to purchase the property at issue for $278,000. Danny executed a Texas Home Equity Note (the Note) with Wells Fargo, and both Danny and Shirree executed a Texas Home Equity Security Instrument (the Deed of Trust). Both Shirree and Danny additionally signed an escrow waiver providing that they would pay the taxes and insurance for the property on their own.

In late 2008, the Robinsons suffered financial strain and could not pay their full amount of property taxes. They contacted their local taxing authority and arranged a payment plan. Without their knowledge, Wells Fargo paid the outstanding tax balance in full and raised the Robinsons' monthly payment to compensate for this payment. The Robinsons could not afford to make the larger payments and they called Wells Fargo to discuss their options. The Robinsons allege that Wells Fargo recommended that they apply for the Home Affordable Modification Program (HAMP) but informed them that they would only be eligible for HAMP if they were in delinquency, so they should miss their monthly payments.

After missing their monthly payments the Robinsons received and submitted a loan-modification application. At the same time, Danny started receiving phone calls on his cell phone attempting to collect the debt and seeking to discuss the loan-modification process. The Robinsons allege that these calls occurred over several months and as frequently as three times a day.

In August 2009, Danny received a notice of default and a notice of intent to accelerate. In October 2009, Danny received a letter from Wells Fargo stating that the property was set for a foreclosure sale. Danny alleges that he

No. 13-11236

called Wells Fargo about the letter but Wells Fargo told them to disregard it because Wells Fargo would not foreclose during the loan-modification review process. Subsequently, Wells Fargo advised the Robinsons that they had qualified for a HAMP trial payment plan but that the offer was only valid through April 17, 2010. The offered, modified payment plan required even higher monthly payments than those under the original loan. When the Robinsons called to ask about this, Wells Fargo instructed them to not sign the loan modification so that it could recalculate the payment without insurance. The Robinsons allege that Wells Fargo again assured them that it would not foreclose during the loan-modification process. Nevertheless, Wells Fargo foreclosed on the property and sold it to Freddie Mac on April 6, 2010.

The Robinsons filed this suit against Wells Fargo and Freddie Mac in Texas state court, and the Defendants removed the case to federal court. The Robinsons alleged claims against Wells Fargo for violations of the Texas Debt Collection Act; unreasonable collection efforts; and breach of contract, among others. The district court granted a motion to dismiss for failure to state a claim on all claims save for alleged violations of the Texas Debt Collection Act. The district court later granted summary judgment on the Texas Debt Collection Act claims. The Robinsons appeal.

## II

The Robinsons first allege that the district court erred in granting summary judgment on their two Texas Debt Collection Act claims brought under §§ 392.301(a)(8) and 392.302(4) of the Texas Finance Code. "We review de novo a district court's award of summary judgment, applying the same standard as the district court."[1] Summary judgment is only appropriate "if the

---

[1] *Trinity Universal Ins. Co. v. Empr's Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010).

No. 13-11236

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

## A

Texas Finance Code § 392.301(a)(8) provides that "a debt collector may not use threats, coercion, or attempts to coerce that employ [the practice of] threatening to take an action prohibited by law."[3]  The Robinsons allege that Wells Fargo violated this provision because it only sent Danny Robinson, and not Shirree Robinson, a notice of default and intent to accelerate.  The Robinsons allege that Wells Fargo, in failing to separately notify Shirree, took an action in violation of the Texas Property Code that requires that "the mortgage servicer of the debt . . . serve a debtor in default under a deed of trust . . . with written notice by certified mail" that the debtor is in default.[4]  This is incorrect.

The duty imposed under the Texas Property Code refers to "a *debtor* in default."[5]  Shirree was not a debtor in this instance.  Shirree did not sign the Note.  In the Note, Danny promised to pay $278,000, plus interest, to the order of the Lender.  He further promised that if he did not pay the "full amount of each monthly payment" on the date it was due that he would be in default.  Shirree did not sign the Note but only signed the Deed of Trust.  This Deed of Trust expressly recognized that Shirree was not a debtor.  Its terms dictate that, "any person who signs this Security Instrument [the Deed of Trust] but does not execute the Note . . . is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety."

---

[2] FED. R. CIV. P. 56(a).

[3] TEX. FIN. CODE ANN. § 392.301(a)(8) (2006).

[4] TEX. PROP. CODE ANN. § 51.002(d) (2007).

[5] *Id.* (emphasis added).

No. 13-11236

Finally, the Security Instrument provides that, "[n]otice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise." The Robinsons claims that applicable Texas law expressly requires otherwise. But even if Shirree were a debtor under the terms of the Note and Deed of Trust, Texas law only requires the provision of constructive notice of an intent to foreclose and accelerate after a default. "The general purpose of [§ 51.002] is to provide a minimum level of protection for the debtor, and it provides only for constructive notice of the foreclosure."[6] In this case, Shirree received constructive notice. Her husband admitted that he received the written notice of default and intent to accelerate, and the notice had been sent to their shared address. Thus even if Shirree were considered a debtor the notice provided was sufficient to meet Wells Fargo's obligations under Texas law.

**B**

The Robinsons also allege that the district court erred in granting summary judgment on their claims that Wells Fargo violated Texas Finance Code § 392.302(4). That provision prohibits a debt collector from harassing or abusing a person by "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."[7] The district court denied this claim because it stated that the Robinsons had failed to demonstrate that all of the alleged phone calls were made for the purposes of debt collection or that Wells Fargo possessed "an intent to harass."

---

[6] *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 720 (Tex. App.—Dallas 1995, no writ) (citing *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied)).

[7] TEX. FIN. CODE ANN. § 392.302(4) (2006).

No. 13-11236

There are few cases that articulate the standard that courts should employ to determine whether a debt collection practice has risen to the level of harassment.  In *Household Credit Services v. Driscol*,[8] a Texas appellate court held that the "[r]eceipt of multiple calls in any one day, often prior to normal waking or after normal retiring hours and often at work even after requests to stop, with a hostile, profane individual on the other end of the line [was] sufficient [to meet the elements of the cause of action]."[9]  While there is little Fifth Circuit precedent on this issue, other courts generally require both a great volume of phone calls and extenuating circumstances, such as making those calls at odd hours[10] or threatening personal violence.[11]

In this case there is no evidence that Wells Fargo phoned outside of regular business hours or that Wells Fargo's debt collection efforts included any threats of violence against the Robinsons.  Danny Robinson testified that he received "several calls a day."  The Robinsons rely on *Young v. Asset Acceptance LLC*[12] for the proposition that call volume is sufficient to raise a genuine issue of material fact.  But in *Young*, the debtor was also called at more inconvenient times, both before 8:00 a.m. and after 9:00 p.m.[13]  The Robinsons have presented no comparable evidence.  Rather, they respond that

---

[8] 989 S.W.2d 72 (Tex. App.—El Paso 1998, pet. denied).

[9] *Household Credit Servs.*, 989 S.W.2d at 85.

[10] *See Enis v. Bank of Am.*, 3:12-CV-0295-D, 2013 WL 1721961, at *6 (N.D. Tex. Apr. 22, 2013) (noting that although it was a close call, plaintiff's evidence that Bank of America called him multiple times a day for a total of 110 calls in 21 months and called as late as 11:00 p.m. was sufficient to defeat summary judgment on this issue).

[11] *See Pioneer Fin. & Thrift Corp. v. Adams*, 426 S.W.2d 317, 319, 321 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.) (holding that plaintiff's evidence that collection agency called plaintiff five times in one night and threatened personal violence was sufficient to support a jury finding that such collection efforts were unreasonable).

[12] No. 3:09-CV-2477-BH, 2011 WL 1766058 (N.D. Tex. May 10, 2011).

[13] *Young*, 2011 WL 1766058, at *3.

6

many of the phone calls occurred while Danny was at work.  But these phone calls were made to his cell phone, not to his office, and this was the phone number Danny listed as his contact number with Wells Fargo.  In sum, we agree with the district court that the evidence does not give rise to a genuine issue of material fact as to whether Wells Fargo's debt collection practices were unreasonable.

## III

The Robinsons also allege that the district court erred in dismissing a variety of other state law claims.  We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim and we construe the facts in the light most favorable to the nonmoving party.[14]  "Dismissal is appropriate only if the complaint fails to plead 'enough facts to state a claim to relief that is plausible on its face.'"[15]

## A

The Robinsons allege that the district court erred in dismissing their claims that Wells Fargo violated § 392.304(a)(8) and § 392.304(a)(19) of the Texas Finance Code.  Section 392.304(a) of the Texas Finance Code prohibits the use of "fraudulent, deceptive, or misleading representation" by a debt collector including, "(8) misrepresenting the character, extent, or amount of a consumer debt," and "(19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."[16]  The Robinsons allege that Wells Fargo violated one or both of these provisions because Wells Forgo "misled [the Robinsons] into believing that they would not foreclose during the loan modification process and that [the Robinsons] had to

---

[14] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

[15] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] TEX. FIN. CODE ANN. § 392.304(a)(8) (2006).

be delinquent in order to qualify for a loan modification." These arguments fail.

First, neither of the allegedly misrepresentative statements concern the "character, extent, or amount of a consumer debt." Thus the only question is whether either of them fall afoul of the catch-all provision of § 392.304(a)(19). They do not. "To violate the TDCA using a misrepresentation, the debt collector must have made an affirmative statement that was false or misleading."[17] Under Texas misrepresentation law, "[a] promise to do or refrain from doing an act in the future is not actionable"[18] unless "the promise was made with no intention of performing at the time it was made."[19] Neither of the allegedly misleading statements meet this standard. The Robinsons have not alleged that Wells Fargo's promise to delay foreclosing until April 17, 2010 was made without any intention of performing it. Nor have the Robinsons alleged that Wells Fargo's statement that the Robinsons needed to be delinquent in order to qualify for the HAMP loan modification program was false or that they would have been eligible for HAMP absent default.[20] Thus the district court did not err in dismissing these claims for failure to state a claim.

---

[17] *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013) (internal quotation marks omitted) (citing *Kruse v. Bank of N.Y. Mellon*, 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013); *see also Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 2014 WL 1044304, at *6 (5th Cir. 2014).

[18] *BCY Water Supply Corp. v. Residential Inv., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied) (citing *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 706 (Tex. App.—Houston [14th Dist.] 1998, pet. denied)).

[19] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

[20] *See also Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012) (noting with approval that a district court had recently stated that "discussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of a debt").

No. 13-11236

**B**

The Robinsons next allege that the district court erred in dismissing their claim that Wells Fargo waived its right to enforce the terms of the Deed of Trust. It is undisputed that the Robinsons missed payments due under the Note. The Robinsons nevertheless contend that Wells Fargo was without power to foreclose on the property because their actions were inconsistent and because they delayed in foreclosing while discussing loan modification terms with the Robinsons. "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right."[21] The intent to relinquish or waive a right must be "unequivocally manifested."[22]

Wells Fargo's decision to delay foreclosing on the property and to engage in discussions regarding the modification of the Robinsons' loan agreement do not manifest an express intent by Wells Fargo to waive its right to foreclose.[23] Further, the Deed of Trust expressly provides that "[e]xtension of the time for payment or modification . . . of the sums secured by [the Deed of Trust] . . . shall not operate to release liability of Borrower," and "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." The district court did not err in dismissing this claim.

**C**

Finally, the Robinsons allege that the district court erred in dismissing their suit to quiet title. "In a suit to [quiet title], the plaintiff has the burden

---

[21] *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 776 (Tex. 2008).

[22] *Williams*, 2014 WL 1044304, at \*5; *see also Thomas*, 499 F. App'x at 341.

[23] *See Williams*, 2014 WL 1044304, at \*5.

of supplying the proof necessary to establish his superior equity and right to relief."[24]   The Robinsons contend that their title is superior because Wells Fargo and Freddie Mac "fail[ed] to comply with the Texas Property Code § 51.002 and the Deed of Trust."  Because we have already concluded that Wells Fargo did have a right to foreclose and did not violate the above provisions, the Robinsons cannot prove the superiority of their title.  The district court did not err in dismissing this claim either.

*    *    *

AFFIRMED.

---

[24] *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).